2007 ND 90

STATE of North Dakota, ex rel. Wayne STENEHJEM, Attorney General, Plaintiff and Appellee

v.

PHILIP MORRIS, INCORPORATED, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, Liggett Group Inc., United States Tobacco Manufacturing Company Inc., and United States Tobacco Sales and Marketing Company Inc., Defendants

Philip Morris, Incorporated, Lorillard Tobacco Company, and R.J. Reynolds Tobacco Company, Defendants and Appellants

State of North Dakota, ex rel. Wayne Stenehjem, Attorney General, Plaintiff and Appellee

v.

Philip Morris, Incorporated, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company, R.J. Reynolds Tobacco Company, Liggett Group Inc., United States Tobacco Manufacturing Company Inc., and United States Tobacco Sales and Marketing Company Inc., Defendants

Commonwealth Brands, Inc., Daughters & Ryan, Inc., Farmers Tobacco Company of Cynthiana, Inc., House of Prince A/S Japan Tobacco International U.S.A., Inc., King Maker Marketing, Inc., Kreteck International, Inc., Liberty Brands, LLC, Liggett Group LLC, Peter Stokkebye Tobaksfabrik A/S, P.T. Djarum, Santa Fe

Natural Tobacco Company, Inc., Sherman's 1400 Broadway N.Y.C., Inc., Top Tobacco, L.P., Vibo Corporation d/b/a General Tobacco, Virginia Carolina Corporation, Inc., and Von Eicken Group, Appellants.

Nos. 20060207, 20060213.

Supreme Court of North Dakota.

June 7, 2007.

Todd Adam Sattler, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for plaintiff and appellee.

Stephen R. Patton (argued on behalf of Original Participating Manufacturers), Kirkland & Ellis LLP, Chicago, Ill., and Lawrence Bender (appeared), Pearce & Durick, Bismarck, N.D., for defendant and appellant R.J. Reynolds Tobacco Company.

Patrick J. Ward (appeared) and Lawrence E. King (appeared), Zuger Kirmis & Smith, Bismarck, N.D., for defendants Philip Morris, Incorporated and Brown & Williamson Tobacco Corporation; and Thomas J. Frederick (appeared), Winston & Strawn, Chicago, Ill., for defendant and appellant Philip Morris, Incorporated.

Gayle E. Rosenstein (on brief), Weil, Gotshal & Manges LLP, Shores, Cal., for defendant and appellant Lorillard Tobacco Company.

Robert J. Brookhiser (argued on behalf of Subsequent Participating Manufacturers) and Elizabeth B. McCallum (on brief), Howrey LLP, Washington, DC, and Gary R. Wolberg (appeared), Fleck, Mather & Strutz, Bismarck, N.D., for appellants Commonwealth Brands, Inc., Daughters & Ryan, Inc., Farmers Tobacco Company of Cynthiana, Inc., House of Prince A/S Japan Tobacco International U.S.A., Inc., King Maker Marketing, Inc., Kreteck International, Inc., Liberty Brands, LLC, Liggett Group LLC, Peter Stokkebye Tobaksfabrik A/S, P.T. Djarum, Santa Fe Natural Tobacco Company, Inc., Sherman's 1400 Broadway N.Y.C., Inc., Top Tobacco, L.P., Vibo Corporation d/b/a General Tobacco, Virginia Carolina Corporation, Inc., and Von Eicken Group.

SANDSTROM, Justice.

[¶1] Philip Morris, Inc., and several other tobacco manufacturers appealed from a district court order denying their motion to compel arbitration of a dispute with the State over the payment of tobacco settlement funds. We conclude the plain and unambiguous language of the parties' settlement agreement requires arbitration of their dispute over application of the diligent enforcement exemption to the agreement's non-participating manufacturer adjustment. We reverse and remand for entry of an order compelling arbitration.

I

[¶2] In the mid–1990s, North Dakota and numerous other states sued Philip Morris, Inc., Brown & Williamson Tobacco Corp., R.J. Reynolds Tobacco Co., Inc., and Lorillard Tobacco Co., Inc., alleging that the tobacco companies had conspired for decades to conceal the health risks related to smoking and the addictiveness of nicotine from the American public, and that the companies had intentionally targeted minors through their marketing and promotional efforts. The states sought damages for the cost to the public of treating smoking-related illnesses. On November 23, 1998, North Dakota, 45 other

states, the District of Columbia, the Commonwealth of Puerto Rico, and four United States territories entered into a comprehensive "Master Settlement Agreement" with the tobacco companies.

[¶ 3] Under the master settlement agreement, the plaintiffs are referred to as the "Settling State[s]," and the defendant tobacco companies are referred to as the "Original Participating Manufacturers." The settlement agreement allowed other tobacco companies not named as defendants to join the agreement, and those that joined are referred to as "Subsequent Participating Manufacturer[s]." The original and subsequent manufacturers are collectively referred to in the settlement agreement as "Participating Manufacturer[s]," and tobacco companies that did not join the agreement are referred to as "Non–Participating Manufacturer[s]."

[¶ 4] The settlement agreement provided that the settling states would dismiss their lawsuits and release past and future claims against the participating manufacturers in exchange for regular annual payments from the participating manufacturers and extensive restrictions on their marketing, advertising, and lobbying. The participating manufacturers are required to make a single nationwide payment into an escrow account by April 15 of each year, and the payment is then allocated among the settling states in accordance with agreed upon percentages. North Dakota receives 0.3660138 percent of each payment. Of the more than $47 billion dollars paid to the settling states since the agreement became effective, North Dakota has received more than $174 million, which has been deposited in the Tobacco Settlement Trust Fund established under N.D.C.C. § 54–27–25.

[¶ 5] The participating manufacturers' annual payment obligation is determined by an "Independent Auditor," currently PricewaterhouseCoopers, under a detailed formula. An aggregate base payment amount is determined for the calendar year according to a list of yearly payments contained in the settlement agreement, and then various adjustments and offsets are applied. One of the adjustments is the "[Non–Participating Manufacturer] Adjustment." Because non-participating manufacturers are not subject to the settlement agreement's payment obligations and marketing restrictions, the settlement agreement allows a reduction of the participating manufacturers' annual payment obligation if: (1) the participating manufacturers prove they have collectively lost market share of more than two percent to the non-participating manufacturers compared to their combined market share before the settlement agreement went into effect, and (2) an independent firm of economic consultants finds that the settlement agreement was a "significant factor" contributing to that market share loss.

[¶ 6] A settling state, however, may avoid the non-participating manufacturer adjustment under subsection IX(d)(2)(B) of the agreement "if such Settling State continuously had a Qualifying Statute ... in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, and diligently enforced the provisions of such statute during such entire calendar year." A "Qualifying Statute" is defined in subsection IX(d)(2)(E) of the agreement as a "Settling State's statute ... that effectively and fully neutralizes the cost disadvantages that the Participating Manufacturers experience vis-à-vis Non–Participating Manufacturers within such Settling State as a result of the provisions of this Agreement." North Dakota enacted its qualifying statute in 1999 on the basis of a model statute included as an exhibit in the settlement agreement. *See*

N.D.C.C. ch. 51–25. If a settling state is subject to this "diligent enforcement" exemption, the agreement requires that the independent auditor reallocate that state's share of the non-participating manufacturer adjustment among other settling states that do not qualify for the exemption pro rata in proportion to their respective allocable shares.

[¶ 7] In each settling state, the court that approved the settlement agreement and entered the corresponding consent decree is that state's master settlement agreement court. The December 23, 1998, consent decree gives the District Court of Cass County, East Central Judicial District, jurisdiction over the implementation and enforcement of the settlement agreement. Subsection VII(a) of the agreement provides in relevant part:

    (a) *Jurisdiction.* Each Participating Manufacturer and each Settling State acknowledge that the Court: (1) has jurisdiction over the subject matter of the action identified in Exhibit D in such Settling State and over each Participating Manufacturer; (2) shall retain exclusive jurisdiction for the purposes of implementing and enforcing this Agreement and the Consent Decree as to such Settling State; and (3) *except as provided in subsections IX(d), XI(c) and XVII(d) and Exhibit O,* shall be the only court to which disputes under this Agreement or the Consent Decree are presented as to such Settling State.

(emphasis added). The relevant exception here, subsection XI(c) of the agreement, provides:

    (C) *Resolution of Disputes.* Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.

[¶ 8] The dispute in this case concerns the independent auditor's refusal to apply the non-participating manufacturer adjustment to the participating manufacturers' April 2006 annual payment, a dispute which actually began in 2004. In March 2004, the independent auditor determined that the participating manufacturers had experienced a market share loss in 2003, and the economic consulting firm determined that the settlement agreement was a significant factor contributing to that market share loss. The independent auditor calculated the non-participating manufacturer adjustment but did not apply the adjustment to reduce the participating manufacturers' payment. Settling states, including North Dakota, had urged the independent auditor to "presume" their qualifying statutes had been diligently enforced, and the independent auditor concluded: "[A]ll Settling States have enacted Model Statutes and represent [sic] to have been in full force and effect continuously since the indicated effective date; therefore, no possible [non-participating manufacturer] adjustment is allocated to the [participating manufacturers]." Some participating manufacturers commenced litigation over the issue in states other than North Dakota.

[¶ 9] Faced with the same situation in 2006, the independent auditor refused to offset the participating manufacturers' an-

nual payment by the non-participating manufacturer adjustment. In a March 7, 2006, notice of preliminary calculations, the independent auditor explained:

The Independent Auditor has received information request responses from some [Participating Manufacturers] denying that some Settling States have "continuously had a Qualifying Statute in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due [1999–2005], and diligently enforced the provisions of such statute during such entire calendar year" (subsection IX(d)(2)(B) of the [Master Settlement Agreement]). The Settling States do not agree with this position. The Independent Auditor is not charged with the responsibility under the [Master Settlement Agreement] of making a determination regarding this issue. More importantly, the Independent Auditor is not qualified to make the legal determination as to whether any particular Settling State has "diligently enforced" its Qualifying Statute. Additionally, the Independent Auditor is aware of certain litigation that is ongoing related to this issue. Until such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the calculation.

Following further objections by the participating manufacturers, the independent auditor again refused to offset their payment, stating in its March 29, 2006, notice of final calculation that "[u]ntil such time as the parties resolve this issue or the issue is resolved by a trier of fact, the Independent Auditor will not modify its current approach to the application of the [non-participating manufacturer] Settlement Adjustment."

[¶ 10] After the participating manufacturers disputed the independent auditor's failure to apply the non-participating manufacturer adjustment, North Dakota and other settling states began actions in their respective master settlement agreement courts seeking declaratory judgments to prevent reduction of their payments by the 2003 non-participating manufacturer adjustment. In the present action for declaratory relief, the State requested that the district court enforce the settlement agreement, declare that North Dakota has "diligently enforced" its qualifying statute, and declare that North Dakota's payments under the settlement agreement not be reduced by the non-participating manufacturer adjustment. In response, the original participating manufacturers moved to compel arbitration of this dispute under the terms of the master settlement agreement's arbitration provision, and the subsequent participating manufacturers joined in the motion.

[¶ 11] The district court denied the motion to compel arbitration, concluding "the issue of whether the State of North Dakota diligently enforced its Qualifying Statute was not a 'dispute, controversy or claim arising out of [or] relating to calculations performed by, or any determination made by, the Independent Auditor'" under the arbitration provision of the settlement agreement. Both the original participating manufacturers and the subsequent participating manufacturers appealed from the district court's order denying their motion to compel arbitration.

[¶ 12] The district court had jurisdiction under N.D. Const. art. VI, § 8; N.D.C.C. §§ 27–05–06 and 32–29.3–26; and under the master settlement agreement and resulting consent decree. The separate appeals by the original participating manufacturers and the subsequent participating manufacturers were timely un-

der N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 32–29.3–28(1)(a).

## II

[¶ 13] Although we have not previously stated a standard of review for an appeal from the denial of a motion to compel arbitration, most courts apply the de novo standard, *see, e.g., Brown v. Denson*, 895 So.2d 882, 885 (Ala.2004); *The Hillier Group, Inc. v. Torcon, Inc.*, 932 So.2d 449, 452 (Fla.Dist.Ct.App.2006); *State ex rel. Wagner v. Kay*, 15 Neb.App. 85, 722 N.W.2d 348, 353 (2006), unless the lower court's decision was based on factual findings, in which case the clearly erroneous standard applies. *See Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir.2006); *Robertson v. Health Net of California, Inc.*, 132 Cal.App.4th 1419, 34 Cal. Rptr.3d 547, 551 (2005). In this case, the district court's decision does not rest upon any factual findings, but is based on the court's interpretation of the master settlement agreement. The master settlement agreement is a contract, and the construction of a written contract to determine its legal effect is a question of law, fully reviewable on appeal. *See Peoples State Bank of Truman, Inc. v. Molstad Excavating, Inc.*, 2006 ND 183, ¶ 19, 721 N.W.2d 43. Consequently, we apply the de novo standard in this case.

[¶ 14] In *Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 10, 599 N.W.2d 261, we summarized some of the rules for construing contracts:

> Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9–07–03; *Lire*, [*Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433–34 (N.D.1995)]. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Lire*, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9–07–06; *Lire*, at 434. . . . Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. N.D.C.C. § 9–07–09. If the parties' intention in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Ohio Farmers Ins. Co. v. Dakota Agency, Inc.*, 551 N.W.2d 564, 565 (N.D.1996).

We also recognize that there is a strong state and federal public policy favoring the arbitration process, and where there is a broad arbitration clause and no exclusion clause, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Gratech Co., Ltd. v. Wold Eng'g, P.C.*, 2003 ND 200, ¶ 14, 672 N.W.2d 672; *State v. Stremick Constr. Co.*, 370 N.W.2d 730, 732 (N.D.1985).

## III

[¶ 15] The issue in this case is whether the parties' dispute involving application of the diligent enforcement exemption to the non-participating manufacturer adjustment is subject to arbitration under the terms of the master settlement agreement.

[¶ 16] Under subsection VII(a) of the agreement, North Dakota's master settlement agreement court is given "exclusive jurisdiction for the purposes of implementing and enforcing this Agreement . . . and . . . except as provided in subsections IX(d) [and] XI(c) . . ., shall be the only court to which disputes under this Agreement . . . are presented as to such Settling State." Subsection IX(d) sets forth the method for calculating the non-participating manufacturer adjustment, and subsec-

tion IX(d)(2)(B) specifically sets forth an exemption to the adjustment "if such Settling State continuously had a Qualifying Statute ... in full force and effect during the entire calendar year immediately preceding the year in which the payment in question is due, *and diligently enforced the provisions of such statute during such entire calendar year.*" (Emphasis added.) Subsection XI(c), in broad language, requires arbitration of "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i).)" Subsection IX(j) addresses the "Order of Application of Allocations, Offsets, Reductions and Adjustments," and states the non-participating manufacturer adjustment "shall be applied to the results of clause 'Fifth' pursuant to *subsections IX(d)(1) and (d)(2) [or] ... IX(d)(4).*" (Emphasis added.) Subsection XI(i) of the agreement is entitled "Miscalculated or Disputed Payments" and again refers to the independent auditor's "adjustments or offsets." Construing these provisions together, we believe the plain and unambiguous language of the settlement agreement requires arbitration of the parties' dispute.

[¶ 17] Our conclusion comports with the decisions of every other state court that has decided the issue to date. The subsequent participating manufacturers have informed this Court that 35 of the 36 cases addressing the issue have ordered arbitration. While many of the cases are unreported lower court decisions, at least five reported appellate court decisions declare the issue arbitrable under the terms of the master settlement agreement. *See State v. The Honorable Timothy J. Ryan,* No. 1 CA–SA 07–0083, 2007 WL ——

(Ariz.Ct.App., Div.One, Dept.E, May 24, 2007); *State v. Philip Morris, Inc.,* 279 Conn. 785, 905 A.2d 42 (2006); *People v. Lorillard Tobacco Co.,* 372 Ill.App.3d 190, 310 Ill.Dec. 222, 865 N.E.2d 546 (2007); *Commonwealth v. Philip Morris Inc.,* 448 Mass. 836, 864 N.E.2d 505 (Mass.2007); *State v. Philip Morris, Inc.,* 30 A.D.3d 26, 813 N.Y.S.2d 71 (N.Y.App.Div.), *leave to appeal granted,* 7 N.Y.3d 716, 826 N.Y.S.2d 181, 859 N.E.2d 921 (N.Y.2006); *see also State v. Philip Morris USA, Inc.,* No. 657, 2006, 2007 WL 1138472 (Del. April 17, 2007) (unreported decision affirming lower court judgment compelling arbitration). The district court in this case, however, found this line of cases "[un]persuasive." The court ruled, "the issue of whether the State of North Dakota diligently enforced its Qualifying Statute was not a 'dispute, controversy or claim arising out of [or] relating to calculations performed by, or any determinations made by, the Independent Auditor,'" mainly because "the Independent Auditor did not settle and end the controversy whether or not the State of North Dakota diligently enforced its Qualifying Statute nor did the Independent Auditor resolve that question by argument or reasoning," but merely made "a presumption or an assumption on that issue." The court also relied on the doctrine of *ejusdem generis* and a California decision, *In re Tobacco Cases I,* 124 Cal.App.4th 1095, 21 Cal. Rptr.3d 875 (2004), to support its conclusion. None of these reasons support the court's holding that the parties' dispute is not subject to the arbitration provision of the settlement agreement.

[¶ 18] First, we agree with the rationale of the Supreme Judicial Court of Massachusetts in rejecting the claim that the arbitration provision does not apply because the independent auditor did not actually settle the diligent enforcement controversy:

We find unconvincing the contention that, because the auditor demurred on the question of diligent enforcement, there were for present purposes no "calculations" or "determinations" to submit to an arbitrator. The Commonwealth argues that this fact excludes the diligent enforcement dispute from the settlement agreement arbitration clause, which by its terms only applies to "calculations performed by, or any determinations made by" the independent auditor. Focusing on this language in the arbitration clause ignores, or at least reduces the force of, the preceding phrase, which brings under the clause "*[a]ny* dispute, controversy or claim *arising out of or relating to*" the auditor's calculations or determinations (emphasis added). Settlement agreement, § XI(c). This language must be read broadly. See *Carpenter v. Pomerantz*, 36 Mass.App.Ct. 627, 630, 634 N.E.2d 587 (1994) (phrase "as broad as ['arising out of or relating to']" creates "strong presumption of arbitrability").

Further undermining the Commonwealth's position, there is nothing in the arbitration clause limiting arbitration to those questions actually determined. Rather, it specifically includes "any dispute concerning the operation or application of any of the adjustments ... described in subsection IX(j)," which discusses the [non-participating manufacturer] adjustment. This language includes disputes over issues not actually determined, just as well as those over issues which are actually determined. Furthermore, because the economic consultants had determined that the settlement agreement was a significant factor in the loss of market share by the participating manufacturers in 2003, the only means by which the auditor could have denied the [non-participating manufacturer] adjustment for that year was

by affirmatively finding that there was diligent enforcement by the States. It is therefore logically necessary that the auditor did make a diligent enforcement determination. Whether the auditor made this determination explicitly, or impliedly, or by employing a presumption makes no difference.

*Commonwealth v. Philip Morris Inc.*, 864 N.E.2d at 513; *see also People v. Lorillard Tobacco Co.*, 310 Ill.Dec. 222, 865 N.E.2d at 553.

[¶ 19] Second, the district court's reliance on the doctrine of *ejusdem generis* is misplaced. Under the rule of *ejusdem generis*, when general words follow specific words in a statutory or contractual enumeration, the general words are construed to embrace only objects similar in nature to those objects specifically enumerated. *Larsen v. Zarrett*, 498 N.W.2d 191, 194 (N.D.1993); *Resolution Trust Corp. v. Dickinson Econo–Storage*, 474 N.W.2d 50, 52 (N.D.1991). Applying this principle, the district court concluded that the phrase in subsection IX(c), " '(including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry forwards and allocations described in subsection IX(j) or subsection XI(i)),' " must be "confined to the specific language in the arbitration clause, which states 'relating to calculations performed by, or determinations made by, the Independent Auditor.' " The district court's conclusion rests on the faulty premise that the independent auditor made no "calculation" or "determination" on the diligent enforcement issue, and is inconsistent with the requirement that the rule of *ejusdem generis* must be used to carry out the intention of the legislature or contracting parties, not to defeat or subvert that intent. *See Aanenson v. Bastien*, 438 N.W.2d 151, 156 (N.D.1989). The doctrine of *ejusdem*

*generis* has no application when the statute or document manifests a contrary intention. *In re Estate of Nelson,* 419 N.W.2d 915, 917 n. 6 (N.D.1988). Use of the words, "including, without limitation," reflects a contrary intention that an enumeration is not exhaustive, rendering the doctrine of *ejusdem generis* inapplicable. *See, e.g., Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc.,* 85 F.3d 1198, 1202 (6th Cir.1996); *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 280 (3rd Cir.1995); *In re Forfeiture of $5,264,* 432 Mich. 242, 439 N.W.2d 246, 251 n. 7 (1989). The rule of *ejusdem generis* does not support the district court's decision.

[¶ 20] Third, the district court's reliance on the California Court of Appeal's decision in *In re Tobacco Cases I,* 124 Cal.App.4th 1095, 21 Cal.Rptr.3d 875, is misplaced. In *In re Tobacco Cases I,* 21 Cal.Rptr.3d at 876–78, a subsequent participating manufacturer sought to compel arbitration of the question whether United States sales of cigarettes by the subsequent participating manufacturer's foreign-affiliated company were required to be reported to the independent auditor as cigarette sales subject to the master settlement agreement. The court held this question was not subject to arbitration under the terms of the settlement agreement because the independent auditor had not made any "calculation" or "determination" regarding the cigarettes at issue. *Id.* at 885. The court noted that "any challenge of those future calculations or determinations, when made by Auditor, presumably will then be subject to section XI(c)'s arbitration requirement." *Id.* at 885 n. 7.

[¶ 21] Here, the independent auditor has made a "calculation" or "determination" of the diligent enforcement issue by its denial of the non-participating manufacturer adjustment. Moreover, California's master settlement agreement court, in ordering arbitration of the present dispute, specifically found the independent auditor had made a "determination ... as to the diligent enforcement" issue, and distinguished *In re Tobacco Cases I* because the appellate court in that case "did not address the interpretation of XI(c) in its relation to IX(j) or IX(d) and the Qualifying Statute or the [non-participating manufacturer] adjustment. Nor did the court interpret section IX(j) in its relation to section IX(d)." *In re Tobacco Cases II,* No. JCCP 4041, slip op. at pp. 4–5 (Superior Court of California, County of San Diego, August 23, 2006). *In re Tobacco Cases I* does not support the district court's decision.

[¶ 22] The State acknowledges the wealth of authority rejecting its position, but contends those courts "identified the wrong dispute and applied the wrong test for arbitrability" under the master settlement agreement. The State contends the test is not whether a dispute is related to the non-participating manufacturer adjustment, but whether the dispute arises out of or relates to a calculation or determination made by the independent auditor. According to the State, this "error[] ... led to the rash of State opinions" compelling arbitration. However, the State concedes that the diligent enforcement dispute "certainly" relates to or arises out of the non-participating manufacturer adjustment, and the courts cited above did address whether the dispute arises out of or relates to a calculation or determination made by the independent auditor. As the Connecticut Supreme Court reasoned in *State v. Philip Morris, Inc.,* 905 A.2d at 49:

As we have discussed previously herein, § IX(j) describes the steps that the independent auditor must take in calculating the participating manufacturers' annual payments and the sixth step in that

process is the application of the nonparticipating manufacturer adjustment. Thus, the independent auditor, in calculating the annual payments, had to determine whether to apply that adjustment. Accordingly, we conclude that the underlying dispute over the independent auditor's decision not to apply the adjustment falls within the scope of the arbitration provision because it directly involves *determination* of the independent auditor. Moreover, this dispute also *arises out of or relates to* the independent auditor's *calculation* of the annual payments because its determination not to apply the nonparticipating manufacturer adjustment resulted in it *calculating* higher annual payments than if it had determined that the adjustment should apply.

*See also People v. Lorillard Tobacco Co.,* 310 Ill.Dec. 222, 865 N.E.2d at 553–54; *Commonwealth v. Philip Morris Inc.,* 864 N.E.2d at 513; *State v. Philip Morris Inc.,* 813 N.Y.S.2d at 75–76. These courts did not identify the "wrong dispute" or apply the "wrong test" for arbitrability. Arbitration is the result under either formulation of the issue.

[¶ 23] The State argues the participating manufacturers' interpretation of the master settlement agreement is "absurd[]" because it would result in "unworkable" year-long diligent enforcement "mega-proceedings" before the independent auditor and the arbitration panel involving all of the settling states. We doubt that litigating diligent enforcement issues in the trial and appellate courts of 52 jurisdictions would be any more timely and efficient than litigating the issue before an arbitration panel. *See State v. Philip Morris USA, Inc.,* No. 657, 2006, 2007 WL 1138472, at *1. We agree with the observations of the court in *State v. Philip Morris, Inc.,* 813 N.Y.S.2d at 76:

We note, as did the Connecticut Superior Court when it addressed this identical issue on a motion to compel arbitration in that state, that there is a compelling logic to having these disputes handled by a single arbitration panel of three federal judges, rather than numerous state and territorial courts. It saves all parties to the agreement from having to relitigate the Independent Auditor's determinations "on multiple occasions, with potentially conflicting decisions by multiple tribunals" (*"State of Connecticut v. Philip Morris, Inc.,* 2005 WL 2081763, *39, 2005 Conn. Super LEXIS 2067, *115)." The chaos that can result from numerous tribunals addressing identical issues with varying results is underscored by the fact that the Connecticut court reached the opposite conclusion from that of the IAS court here. Since the granting of an exemption by one settling state will automatically lead to the reallocation of its allocated portion of the [Non–Participating Manufacturer] adjustment to all other non-exempt settling states, each governmental signatory has its own self-interest at stake in the outcome of this issue, which is necessarily in conflict with every other state. Such a result defeats the whole purpose of having a Master Settlement Agreement. The mechanism of submitting disputes involving the decisions of the Independent Auditor to a neutral panel of competent arbitrators, who are guided by one clearly articulated set of rules that apply universally in a process where all parties can fully and effectively participate, obviates this problem and ensures fairness for all parties to the [Master Settlement Agreement]. To hold otherwise is contrary to both the spirit and the plain language of the Master Settlement Agreement.

[¶ 24] We have considered the other arguments raised by the State. They are

unpersuasive and do not alter the result in this case. We conclude the plain and unambiguous language of the settlement agreement requires arbitration of the parties' dispute over application of the diligent enforcement exemption to the non-participating manufacturer adjustment, and the district court erred as a matter of law in denying the motion to compel arbitration.

## IV

[¶ 25] We reverse the district court's order and remand for entry of an order compelling arbitration.

[¶ 26] GERALD W. VANDEWALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.